IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.** _____

**MARCUS MORRIS,**

    Plaintiff,

v.

**MPC HOLDINGS, INC. D/B/A PLATTE RIVER INSPECTION SERVICES,**

    Defendant.

---

## ORIGINAL COMPLAINT

---

### SUMMARY

1. Plaintiff Marcus Morris (Morris) brings this lawsuit to recover unpaid overtime wages and other damages from MPC Holdings, Inc. d/b/a Platte River Inspection Services (Platte) under the Fair Labor Standards Act (FLSA).

2. Morris worked for Platte as a horizontal directional drilling inspector.

3. Morris and the Day Rate Inspectors (as defined below) regularly worked for Platte in excess of forty (40) hours each week.

4. But Platte did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, Platte improperly paid Morris and the Day Rate Inspectors a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

9. Platte is headquartered in Longmont, CO.

10. Morris performed work for Platte in this District.

## THE PARTIES

11. Morris worked for Platte from approximately April 2018 until May 2019 as a Horizontal Directional Drilling Inspector.

12. Throughout his employment, Platte paid Morris a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

13. Morris's consent to be a party plaintiff is attached as **Exhibit A**.

14. Morris brings this action on behalf of himself and all other similarly situated workers who were paid by Platte's day-rate system. Platte paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

15. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All current and former inspectors who worked for or on behalf of Platte River Inspection Services and who were paid according to its day rate pay plan in the past three (3) years (the "Day Rate Inspectors").**

16. The identities of the Day Rate Inspectors can be readily ascertained from Platte's records.

17. Platte Midstream Partners LP is a Colorado corporation and may be served with process by serving its registered agent: Jacquie Silva, 3997 S Valley Drive, Suite 101, Longmont, CO 80504, United States.

### COVERAGE UNDER THE FLSA

18. At all times hereinafter mentioned, Platte was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all times hereinafter mentioned, Platte was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all relevant times, Platte has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

21. At all relevant times, Platte has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

22. In each of the past 3 years, Platte's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

23. At all relevant times, Morris and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

24. Platte uniformly applied its policy of paying its Inspectors, including Morris, a day rate with no overtime compensation.

25. Platte applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

26. By paying its Inspectors a day rate with no overtime compensation, Platte violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

27. As a result of this policy, Platte and the Day Rate Inspectors do not receive overtime as required by the FLSA.

28. Platte's uniform compensation scheme of paying its Inspectors a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## The Facts

29. Platte provides inspection services to the oil and gas industry. Platte's services include the inspection of pipeline and facility construction, maintenance and operations.

30. To complete its business objectives, it hires personnel (like Morris) to perform inspection work. The job titles of these personnel include Construction managers, Project managers, Chief inspectors, Facility inspectors, AWS-CWI and CPWI welding inspectors, NACE coating/corrosion inspectors, Utility inspectors, Environmental inspectors, Drafting and design, Safety Personnel, and Horizontal directional drilling inspectors.

31. Many of these individuals worked for Platte on a day rate basis (without overtime pay).

32. These workers make up the proposed collective of Day Rate Inspectors.

33. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

34. Throughout his employment with Platte, Platte paid him on a day rate basis.

4

35. Morris and the Day Rate Inspectors work for Platte under its day rate pay scheme.

36. Morris and the Day Rate Inspectors do not receive a salary.

37. If Morris and the Day Rate Inspectors did not work, they did not get paid.

38. Morris and the Day Rate Inspectors receive a day rate.

39. Morris and the Day Rate Inspectors do not receive overtime pay.

40. This is despite the fact Morris and the Day Rate Inspectors often worker 10 or more hours a day, for 6 days a week, for weeks at a time.

41. For example, Morris received a day rate for each day he worked for Platte.

42. Although he typically worked 6 days a week, for 10 or more hours a day, he did not receive any overtime pay.

43. Morris and the Day Rate Inspectors received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

44. Morris and the Day Rate Inspectors are not employed on a salary basis.

45. Morris and the Day Rate Inspectors do not, and never have, received guaranteed weekly compensation from Platte irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

46. Morris and the Day Rate Inspectors work in accordance with the schedule set by Platte and/or its clients.

47. Morris's work schedule is typical of the Day Rate Inspectors.

48. Platte controls Morris and the Day Rate Inspectors' pay.

49. Likewise, Platte and/or its clients control Morris and the Day Rate Inspectors' work.

50. Platte requires Morris and the Day Rate Inspectors to follow Platte and/or its clients' policies and procedures.

51. Morris and the Day Rate Inspectors' work must adhere to the quality standards put in place by Platte and/or its clients.

52. Morris and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

53. As an Inspector, Morris was responsible for ensuring Platte's and/or its clients' projects were completed according to established guidelines, specifications, and restrictions.

54. All Platte's Day Rate Inspectors perform similar duties, inspecting projects, ensuring work is done according to established guidelines, specifications, and restrictions.

55. Morris and the Day Rate Inspectors provide inspection reports to Platte (and/or its clients') personnel.

56. At all relevant times, Platte and/or its clients maintained control over Morris and the Day Rate Inspectors via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

57. Morris and the Day Rate Inspectors do not have the power to hire or fire any employees.

58. Morris's working relationship with Platte is similar Platte's relationship with its other Day Rate Inspectors.

59. Platte knew Morris and the Day Rate Inspectors worked more than 40 hours in a week.

60. Platte knew, or showed reckless disregard for, whether the Day Rate Inspectors were entitled to overtime under the FLSA.

61. Nonetheless, Platte failed to pay Morris and the Day Rate Inspectors overtime.

62. Platte willfully violated the FLSA.

## CAUSES OF ACTION
## FLSA VIOLATIONS

63. By failing to pay Morris and those similarly situated to him overtime at one-and-one-half times their regular rates, Platte violated the FLSA's overtime provisions.

64. Platte owes Morris and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

65. Because Platte knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Platte owes these wages for at least the past three years.

66. Platte is liable to Morris and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

67. Morris and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COLLECTIVE ACTION ALLEGATIONS

68. Morris incorporates all previous paragraphs and alleges that the illegal pay practices Platte imposed on Morris were likewise imposed on the Putative Class Members.

69. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

70. Numerous other individuals who worked with Morris indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

71. Based on his experiences and tenure with Platte, Morris is aware that Platte's illegal practices were imposed on the Day Rate Inspectors.

72. The Day Rate Inspectors were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

73. Platte's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Inspectors.

74. Morris's experiences are therefore typical of the experiences of the Day Rate Inspectors.

75. The specific job titles or precise job locations of the Day Rate Inspectors do not prevent class or collective treatment.

76. Morris has no interests contrary to, or in conflict with, the Day Rate Inspectors. Like each Day Rate Inspector, Morris has an interest in obtaining the unpaid overtime wages owed to him under federal law.

77. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

78. Absent this action, many Day Rate Inspectors likely will not obtain redress of their injuries and Platte will reap the unjust benefits of violating the FLSA and applicable state labor laws.

79. Furthermore, even if some of the Day Rate Inspectors could afford individual litigation against Platte, it would be unduly burdensome to the judicial system.

80. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

81. The questions of law and fact common to the Day Rate Inspectors predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.    Whether the Day Rate Inspectors' rights were violated as a result of Platte's day rate pay plan;

    b.    Whether Platte's day rate pay plan was made in good faith;

    c.    Whether Platte's decision to not pay time and a half for overtime to the Day Rate Inspectors was made in good faith;

    d.    Whether Platte's violation of the FLSA was willful; and

    e.    Whether Platte's illegal pay practices were applied uniformly across the nation to all Day Rate Inspectors.

82. Morris's claims are typical of the claims of the Day Rate Inspectors. Morris and the Day Rate Inspectors sustained damages arising out of Platte's illegal and uniform employment policy.

83. Morris knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

84. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

## JURY DEMAND

85. Morris demands a trial by jury

## PRAYER

86. WHEREFORE, Morris prays for judgment against Platte as follows:

    a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.  For an Order pursuant to Section 16(b) of the FLSA finding Platte liable for unpaid back wages due to Morris and the FLSA Class Members for liquidated damages equal in amount to their unpaid compensation;

c.  For an Order awarding Morris and the Day Rate Inspectors their reasonable attorneys' fees and expenses as provided by the FLSA;

d.  For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

e.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Carl A. Fitz**
Texas Bar No. 24105863
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**